Anderson, J.
This suit was brought to subject a tract of 225T/¡ acres of land in Cul-peper county to sale, belonging to the appel-lee, Thompson, to pay a debt which he owed the appellant ever since 1858, for borrowed money. The debt was secured by a deed of trust on the land. The indebtedness of the said Thompson on the 1st of June, 1871, was ascertained by the report of a master, to which there was no exception, and which is confirmed by a decree in the cause, to be $16,-637,35, chargeable on the land; and the debt due the appellant, part thereof, as of that date, to be $7,245.50, and to be the first lien; and the fee simple value of the land to be $30 an acre, aggregating for the whole tract $7,-575; and its annual value to be such that the rents and profits would be wholly insufficient to pay even the appellant’s debt in five years. On lhe 8th of June, 1871, it was decreed to be sold on unusually favorable terms to the debtor — that is, the purchaser to pay in cash an amount sufficient to pay costs and expenses of sale, and the balance of the purchase money in six equal annual instalments, with interest from the day of sale; and four commissioners, any one of whom was author-ised to act, were appointed to make the sale.
Two of them reported a sale at the price of $27.25 per acre, aggregating for the whole tract $6,880.62; and that *James W. Curtis, being the highest bidder, was the purchaser, and said commissioners recommended a confirmation of the sale by the court. The other two commissioners reported that they were of opinion that the price was too far below the value of the land, and too great a sacrifice to justify its being cried out to the bidder, and consequently did not recommend a confirmation of the sale.
George G. Thompson, the debtor, excepted to the report of sale, and objected to its confirmation on the ground alone of the inadequacy of price; and filed five affidavits in support of his exception.
The purchaser relied upon the clerk’s certificate of the assessment made by the assessor for the year 1870 of the said 22514 acres of land at $30 an acre, aggregating $7,575, returned with the report of sale, and which is the exact valuation made by the commissioners of the court in this cause, and which was confirmed by a decree of the court; and also upon the affidavits of three persons, which he filed, declaring that in their opinion the sale reported of the tract of land on the terms of the sale, subject as it was to Mrs. Thompson’s contingent right of dower, was for the fair value of the land.
The first question to be considered is, ought said sale to have been confirmed by the court; and was it error to set it aside?
The decree authorized the sale to be made by any one of the commissioners. Two of them were consequently competent to make it jointly, and when confirmed by the court, was as effectual to transfer the right of property to the purchaser as if all four of the commissioners had united in it. And the only question is as to the adequacy of the price for which it sold.
It is not pretended that there was any unfairness in the sale, or that the commissioners had failed in their *duty to give public notice thereof, and in attracting public attention to it, or in the ful-filment of any of the requirements of the decree, or in proper efforts to get the best price they could for the land. The only ground upon which it was sought to be set aside was inadequacy of price.
I do not think that mere inadequacy of price is sufficient ground for setting aside a sale fairly made pursuant to a decree of the court. The creditor is entitled to his money and to a sale of the land to get it, according to contract. And all that the debtor can require, is, that it shall be sold for as much as it will bring in market. After his default he is not entitled to hold the money and the land too, which he contracted should be sold to pay his debt, because, in the opinion of some of his neighbors, it is worth a great deal more than the price at which it was cried out to the highest bidder at public auction, whilst others of his neighbors were of opinion that the price at which it was cried out was as much as it was worth, subject as it was to a contingent right of dower; and their opinion is fortified by an unreserved and subsisting decree of the court in the cause, which fixes its value, and also by the sworn assessor of the commonwealth. In Effinger v. Ralston, 21 Gratt. 430, Judge Moucure said: “To induce a court to set aside a sale fairly made in pursuance of a decree, there ought to be a decided preponderance of the evidence of such inadequacy, even if it be conceded that mere inadequacy of price is in itself a sufficient ground for setting aside such sale.” This language implies that he did not think mere inadequacy a sufficient ground.
As it is the right of the creditor to have the land sold for the best price it will bring in the open market for the payment of the debt, it would seem to follow, that to induce a court to set aside a fair sale made pursuant to *its decree, it should not only be shown that the price for which it sold was clearly inadequate, but it should also appear that if exposed to sale again there was an assurance that it would bring materially more. Hence the English rule requiring the offer of an advance on the highest bid, and that, too, not an inconsiderable advance, some of the cases say not less than ten per cent., and the money to be deposited or well secured. If the English practice is *502 to be established in Virginia,, this requirement, which is the best part of it, ought to be strictly carried out. I think if a judicial sale is to be set aside for inadequacy of price it should only be in a case where a higher price is offered and deposited or well secured. But I express no opinion upon the question, whether the practice where it obtains, is founded in equity and justice of setting aside a sale for inadequacy of price and reopening the bids, notwithstanding that the property has been cried out to the highest bidder, and the sale was in all respects fairly conducted pursuant to the- decree, and the purchaser is ready and offers to comply with the terms of sale. It is a question worthy of grave consideration, but is not involved in the decision of this cause.
The statute prescribes the inadequacy of price for which commissioners of judicial sales for debts contracted or liabilities incurred prior to the 10th of April, 1865, shall not sell the debtor’s land. It provides that where the land does not bring, at the first and second exposure to sale, three-fourths of the. last 'official assessment made for the purposes of taxation, it shall not be sold. Code of. 1873, ch. 3 74, § 4, p. 1123. This act was passed in tenderness to the debtor. . It may be regarded as a statutory prescription as to what shall be regarded inadequacy of price to avoid a judicial sale of real estate, and that only for the first and second exposure.- of the land to sale.. After that, in deference to the rights of the creditor, the *statute interposes no restriction, but allows the land to be sold for what it will bring.
To apply the statutory rule to this case, there was no such inadequacy of price at the first sale as would authorize its avoidance. By the last assessment for the purposes of taxation, (the assessment of 1870), this tract of land was assessed at $30 an acre — three-fourths of which is $22.50. It sold for $27.25 an acre, that is $4.75 more than three-fourths of its last assessed value. By the last assessment in 1872, it was assessed at $20 an acre. Again, the value of the land had been ascertained previous to the sale, by a decree of the court in the cause. The question had been referred to a master who took testimony on the subject, and reported to the court that its fee simple value was $30 an acre, aggregating $7,575 for the whole tract. To this report there were no exceptions, though the party now contesting the sale on the ground alone of inadequacy of price was a party to the suit. The "report of the master was confirmed by a decree of the court, which has never been set aside, and it would seem fixes the fee simple value of the land as between the parties to the suit. Deduct from that valuation and from the assessment of the state assessor, which puts the value at the same figures, the value of Mrs. Thompson’s contingent right of dower, which is not considered in either the assessment or the master’s valuation, and it would most probably leave less than $27.25 an acre, the price for which the land sold subject to that contingent right of dower.
But it is remarkable that the only parties who have a pecuniary interest in setting aside this sale, if there is any probability that the land would bring a better price at a second offering, have taken no exceptions to the sale. They are the other creditors, particularly those of the second and third classes. After the payment of the *appellant’s debt, R. M. Bridges, whose debt is of the second class, would then be entitled to satisfaction. His debt, a judgment, with interest to 1st of June, 1871, and costs, amounted to $302.83. If there should remain a balance of the fund after satisfying _ his debt, John C. Major, whose judgment. is of the third class, and amounted on the said 1st of June to $996.51, would next be entitled to satisfaction. Then follows debts of fourth, fifth, sixth, seventh, eighth and ninth classes, amounting on the 1st of June, 1871, to over $10,000, which would have to be paid out of the proceeds of the sale before George G. Thompson, the debtor, the only person who has taken any exception to the sale, could receive anything. It is therefore manifest that the debtor- who has so totally failed to fulfil his contract with the appellant, that he has only paid one year’s interest on the debt,., which' he promised and bound himself to pay semi-annually, could not be benefited by setting it aside, whilst those who could be benefited by a second sale if the land sold for more than would be required to pay the appellant’s debt, are making no objection to the sale. If they were not satisfied with the sale, or believed there was the least probability, if offered for sale again, that it would bring more than the appellant’s debt, can there be a doubt that they, too, would be seeking to set it aside? It may fairly be presumed from their acquiescence, that they did not believe there was the least probability that they would be benefited by a second sale, or that the land could be sold for a better price.
And such has in fact been the result. After giving the notice of the second sale required by the decree, after all the debtor could do, we may presume, to get other bidders, the land sold for precisely the same price it brought before. This fact strongly confirms the opinion *that the price at which it was cried out at the first sale was the fair value of the land.
But the second sale was also set aside by the court, and a third sale directed to be made by the same commissioners, with only this difference, that the commissioners are now required to act jointly, which would most likely be impracticable and prevent a. sale. In the meantime the debt is increasing by accumulating interest, and the security is depreciating. It was ample security -when the debt was contracted; now it is insufficient. By the default of the debtor in not paying the interest, which he contracted to do semiannually, the debt now amounts to near $9,-000, whilst the creditor is receiving interest only on $4,300. This is great injustice to the creditor, whilst it does not benefit the debtor. It would have been greatly better for him, as well as this creditor and his other *503 creditors, that the land had been sold many years ago. Upon the whole, we are of opinion that the decree of the circuit court of the 17th of November, 1871, refusing to confirm the sale made on the 21st of August, 1871, as reported by James W. Green and U. E. Williams, commissioners, at the November term, 1871, of said court, and sustaining the exception of George G. Thompson to said sale and ordering the same to be set aside, and all the proceedings subsequent thereto, are erroneous, and that the same be set aside, and that the cause be remanded with instructions to confirm said sale of the 21st of August, 187J, and for such further proceedings as may be necessary to execute said sale, and for the final decision of the cause in conformity with this opinion.